SUSAN M. CHEHARDY, Judge.
|«>This is a negligence and products liability action, in which the plaintiffs appeal a summary judgment that dismissed one of the defendants, Medical Waste Services of America, L.L.C. We affirm.
Christopher P. Marshall and Michel S. Marshall, appearing individually and on behalf of their minor child, Jacob G. Marshall, filed suit in November 2001 against East Jefferson General Hospital Foundation and Jefferson Parish Hospital Service District No. 1 d/b/a East Jefferson General Hospital (both hereafter “EJGH”), as well as Medical Waste Services of America, L.L.C. They alleged that on May 3, 2001 Jacob was at East Jefferson General Hospital with his father, visiting his mother following the birth of the Marshalls’ daughter. Jacob — then two years old-— was injured when he put his hand into an uncovered hazardous waste bin containing at least thirty to forty used hypodermic needles. When Mr. and Mrs. Marshall realized them son had been stuck on the finger by a contaminated needle, they both became very upset and fearful.
Jacob underwent blood tests for hepatitis and HIV infection, which were negative. Jacob’s pediatrician advised the Marshalls that Jacob would require follow-up testing for at least one year, including a six-month test and a test at one year. The plaintiffs asserted they sustained, and continue to sustain, severe | ¡¡emotional upset, fear, and anxiety, worrying about their son’s health and possible exposure to HIV and other diseases that may be incurable or cause severe, debilitating and permanent injury or death.
The Marshalls claimed they suffered severe mental anguish as bystanders, and as a result of witnessing the foreseeable act of their son having been stuck by used, contaminated syringes. They alleged the defendants were negligent in the following respects:
a. failing to insure that the hazardous waste bin was sealed;
b. failing to properly and routinely inspect the hazardous waste bin when the defendants knew or should have known that such failure presented an unreasonable risk of harm;
c. failing to discover in a timely manner that the hazardous waste bin top or seal had been lost, misplaced or not originally delivered with the bin;
d. failing to replace the top or seal to the hazardous waste bin when the defendants knew or should have known that the top or seal was missing;
e. failing to remove the bin and/or replace same in a timely and reasonable manner;
f. failing to empty the contents of the hazardous waste bin and allowing same to become so full of waste that the container posed an unreasonable risk of harm under the circumstances;
g. placing the hazardous waste bin in its location in the room such that the location posed an unreasonable risk of harm;
h. failing to properly train and supervise its employees in the maintenance, installation or use of the hazardous waste bin;
i. failing to report the absence of a seal or top on the hazardous waste bin;
j. inadequate training and hiring;
k. negligent promulgation, implementation and enforcement of policies and procedures to safely maintain the premises;
*446 l. allowing a hazardous situation consisting of faulty or damaged equipment to exist on the premises;
m. failing to perform contractual obligations thereby creating an unreasonable risk of harm to plaintiffs;
n. failing to properly inspect its personnel on proper methods of incident investigation, so as not to |4cause intentional infliction of emotional distress to plaintiffs, by its employees;
o. acting in a careless and reckless manner without due regard for the safety of others;
p. and all other such acts and omissions of negligence and strict liability as will be proven at trial.
As to Medical Waste Services specifically, the plaintiffs alleged the hazardous waste bin at issue was designed, manufactured and/or installed by Medical Waste Services, and “was unreasonably dangerous in design and as presented in its use, as it contained no top or seal, had not been properly installed, maintained or inspected, and had not been regularly emptied, all of which presented an unreasonable risk of harm.”
Medical Waste Services filed a motion for summary judgment, seeking dismissal of the plaintiffs’ claims against it. Medical Waste Services argued it is not liable because the plaintiffs’ experts’ opinions are concerned only with the placement of this particular type of sharps bin in the hospital room at issue, and do not state the bin is inherently dangerous in design or that it should never be used anywhere. Medical Waste Services also argued that EJGH did not involve it as the supplier in the bin-selection process, and that it could have provided EJGH with an alternative design had it been requested by EJGH.
After a hearing, the district court granted summary judgment in favor of Medical Waste Services without assigning reasons. The plaintiffs appeal.
On appeal the Marshalls assert the district court erred in granting the motion for summary judgment because there are disputed issues of material fact related to the plaintiffs’ products liability claims, and because Medical Waste Services failed to establish its burden of proof as mover.[1] They argue that the pleadings, | ^depositions, and affidavits create factual disputes concerning the unreasonable design and inadequate warning of Medical Waste Services’ biohazard container.
The plaintiffs contend that Medical Waste Services’ motion for summary judgment should have been denied because the plaintiffs produced factual support sufficient to establish their evidentiary burden of proof at trial under the LPLA. Specifically, they assert the record is replete with evidence, including the defendants’ own testimony, establishing that Medical Waste Services’ biohazards container was unreasonably dangerous in design because an alternate design was available to prevent the plaintiffs’ damage, and adopting such a design would not burden Medical Waste Services. Further, they argue there are material factual questions in dispute as to whether Medical Waste Services provided an adequate warning, if any.
In opposition, Medical Waste Services contends the trial court properly granted the motion for summary judgment, because the plaintiffs’ own experts concluded that the sharps disposal bin at issue should *447 not have been used in the type of hospital room where the accident at issue occurred, but those experts did not conclude that it was inherently dangerous for use anywhere. Further, Medical Waste Services established that the decision to use this type of sharps bin in the room at issue was made solely by the hospital and Medical Waste Services had no role whatsoever in that decision. Medical Waste Services also argues the plaintiffs did not plead an adequate warnings claim and presented no evidence to support one.
Finally, Medical Waste Services points out that the plaintiffs did not submit a statement of contested factual issues, nor did they submit affidavits or deposition transcripts to contradict the evidence presented by Medical Waste Services. Instead, the plaintiffs adopted by reference the oppositions they had filed | ^previously to a motion for summary judgment by EJGH. Medical Waste Services contends its motion for summary judgment raised distinct factual and legal issues from the hospital’s motion, which the plaintiffs never addressed separately.
According to the documents in support of the motion, Medical Waste Services supplied the plastic bins to EJGH, picking up filled bins from a loading dock for proper disposal, and leaving clean bins. Two types of bins were available at the time of this incident. The type used here has a round hole in the top and a removable plastic cap. The other has a horizontally-hinged mailbox-style opening, with a guard that would prevent a child from sticking a hand inside. EJGH ordered the first type, with the round hole in the top, and EJGH decided where to install the bins.
Medical Waste Services relied on the deposition of Allan A. Cooper, Jr., who was Managing Member of Medical Waste Services at the time of the incident here. He testified his company did not manufacture the type of bin at issue here, which is plastic, reusable, and has a cap for the round hole, which he called a “vertical drop lid.” He said the other type of bin, with the horizontal slot opening, has a mailbox-type lid — an enclosure at the top, with an opening that swiveled back and forth. He said the official name for the second type of bin is “horizontal lid.”
Mr. Cooper stated that Medical Waste Services was not involved with the hospital personnel in making decisions concerning which sharps disposal containers were selected for their hospital facility. It was the customer’s decision not to involve Medical Waste Services in that process. He also stated that the service provided by Medical Waste Services to EJGH was supplying reusable waste bins, picking up filled bins at the hospital’s loading dock for proper disposal of the contents, and delivering clean bins to replace the filled ones that were |7removed. Medical Waste Services’ employees did not go inside the hospital to perform their duties.
Medical Waste Services also attached reports by the plaintiffs’ expert witnesses, infectious disease specialist Dr. Julio Figueroa and human factors expert Dr. Lila Lowe, as well as a deposition of Dr. Figueroa.
Dr. Figueroa stated that the horizontal-lid bin is preferable for use in a maternity room because of the types of people who might be present. Asked whether the vertical-drop-lid bin is inappropriate for any use in the hospital setting, Dr. Figueroa responded, “Not any use, certainly not.” He said it is appropriate for situations where health care workers are involved and there are no other individuals present who may potentially come in contact with sharps — rooms in which there is a high degree of control as to who is going in and out.
Dr. Figueroa said it would be more of a problem in high traffic areas with individu *448 als who may not be aware of the nature of the box’s contents, such as pediatric areas, mental health areas, or maternity rooms if children are present. He said that the hospitals and clinics in which he practices have this type of bin in the rooms. In his opinion, however, in a maternity ward where one should anticipate the presence of children, the alternative design should have been used.
Similarly, in her report Dr. Lowe stated the design of the sharps disposal container in the room “was not appropriate for this location and setting because it did not prevent the introduction of the hand into the filled container.” Other appropriate sharps disposal container designs were readily available to the hospital. In addition, she stated, “the design of this sharps container created a significant and potentially deadly hazard for a foreseeable population who could be present” in that hospital room. Based on information provided to them, both experts also stated there was no warning label on the sharps disposal container involved.
|Jn opposition to the motion for summary judgment, the plaintiffs provided the affidavit of Christopher Marshall, who stated that Jacob was seated in a chair in the corner when their newborn daughter was brought into the room. He heard Jacob scream out in pain and saw he had reached into an unsealed needle disposal bin mounted on the wall of the room. The disposal bin did not have a protective cap to prevent someone from reaching into the bin, and it was unmarked, without any warnings of the dangers presented.
The plaintiffs also provided the affidavit of Jacob’s pediatrician, Hyman C. Tolmas, M.D. Dr. Tolmas stated he had come into Mrs. Marshall’s hospital room shortly after Jacob had contact with the contaminated needle; he understood the parents’ concern and felt their emotional responses were appropriate; he opined that Jacob should and has required additional testing, for at least two years, including repeat testing for Hepatitis B and C, HIV, and also administration of a liver profile. In his opinion such testing should be performed three times, or every four months, because the incubation period for such diseases can be protracted. In Dr. Tolmas’ opinion, the medical waste bin in Mrs. Marshall’s room should have been sealed and of a type that could prevent this type of incident as suggested by standards of NIOSH (National Institute for Occupational Safety and Health).
The summary judgment procedure is favored and shall be construed to secure the just, speedy and inexpensive determination of most actions. La.C.C.P. art. 966(A)(2). A motion which shows that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law shall be granted. La.C.C.P. art. 966(C)(1).
The burden of proof remains with the movant. However, if the movant will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, the movant’s burden on the motion does not require him to negate all essential 13elements of the adverse party’s claim, action, or defense, but rather to point out to the court that there is an absence of factual support for one or more elements essential to the adverse party’s claim, action, or defense. Thereafter, if the adverse party fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact.
La.C.C.P. art. 966(C)(2).
Summary judgments are reviewed on appeal de novo. An appellate court thus asks the same questions as does the trial court in determining whether summary *449 judgment is appropriate: whether there is any genuine issue of material fact, and whether the mover-appellant is entitled to judgment as a matter of law. Moreover, the summary judgment procedure is favored, and shall be construed, as it was intended, to secure the just, speedy, and inexpensive determination of most actions. [Citations omitted.]
Nuccio v. Robert, 99-1327, p. 6 (La.App. 5 Cir. 4/25/00), 761 So.2d 84, 87, writ denied, 00-1453 (La.6/3/00), 766 So.2d 544.
Once the motion for summary judgment has been properly supported by the moving party, the failure of the adverse party to produce evidence of a material factual dispute mandates the granting of the motion. Id.
We find there is no dispute of material fact relating to the liability of Medical Waste Services. It is true there was an alternative disposal bin available that would have been safer, but the plaintiffs did not refute the evidence offered by Medical Waste Services that the choice of bin was entirely made by EJGH. The plaintiffs failed to show that the absence of a cap on the vertical-drop lid container here was attributable to Medical Waste Services. Further, the plaintiffs did not allege an inadequate warnings claim in the petition and did not support such a claim against Medical Waste Services, nor did they offer evidence to contradict Mr. Cooper’s testimony that Medical Waste Services did not manufacture the bins.
|inFor the foregoing reasons, we conclude the trial court did not err in granting the motion for summary judgment. The judgment is affirmed. Costs of this appeal are assessed against the plaintiffs-appellants.

AFFIRMED.

. Although the petition and supplemental and amending petition did not specifically refer to the Louisiana Products Liability Act ("LPLA”), La.R.S. 9:2800.51, Louisiana is a fact-pleading state and plaintiffs are not required to allege a theory of recovery. Royal Furniture Co. v. Benton, 260 La. 527, 256 So.2d 614, 616 (La.1972).